IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MAY 1998 SESSION

FILED

September 15, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 01C01-9708-CR-00320 |
| Appellee, | * | Davidson County |
| vs. | * | Hon. Cheryl Blackburn, Judge |
| WILLIAM ALONZO HAMILTON, | * | (Delivery of Controlled Substance, Simple Possession) |
| Appellant. | * | |

For Appellant:

Jeffrey A. DeVasher
Assistant Public Defender
1202 Stahlman Building
Nashville, TN  37201
(on appeal)

J. Michael Engle
Sr. Assistant Public Defender
1202 Stahlman Building
Nashville, TN  37201
(at trial)

For Appellee:

John Knox Walkup
Attorney General & Reporter

Janis L. Turner
Assistant Attorney General
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, TN  37243-0493

John Zimmermann
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN  37201

OPINION FILED:_____

AFFIRMED AS MODIFIED

GARY R. WADE, PRESIDING JUDGE

<u>OPINION</u>

The defendant, William Alonzo Hamilton, was convicted of delivery of over 0.5 gram of cocaine and simple possession of cocaine. The trial court sentenced the defendant, who qualified as a Range I offender, to ten years for delivery of cocaine and eleven months, twenty-nine days at seventy-five percent for simple possession. The sentences are to be served concurrently. A fine of $2,250.00 was imposed.

In this appeal of right, the defendant presents the following issues for our review:

(1)  whether the evidence is sufficient;

(2)  whether the trial court erred by admitting the statements of a co-conspirator; and

(3)  whether the sentence is excessive.

We affirm the judgment of the trial court but modify the sentence because of the misapplication of an enhancement factor.

In early April of 1995, Agent Gary Luther of the Drug Task Force was involved in an undercover investigation of Donna Gail Smith, from whom he had purchased cocaine. On April 11th, as Agent Luther attempted to arrange another purchase, Ms. Smith responded, "[O]kay ... let me get in touch with my man and I'll let you know." Later that afternoon, Ms. Smith telephoned Agent Luther and said, "I've got in touch with my guy." She stated that he could purchase two eight-balls of cocaine, about seven grams, for $380.00. Ms. Smith agreed to meet Agent Luther at Shoney's, her place of employment, at 10:00 P.M.

When Agent Luther arrived, he had $500.00 in marked bills and wore a transmitter. Ms. Smith directed him to a closed section of the restaurant and explained that she did not have the cocaine but that she had "called her guy and it was supposed to be there ...." Ms. Smith then said, "I'll have to pay when he gets here," so Agent Luther handed her $380.00. When several minutes passed, Agent Luther asked her to inquire about the delay. Ms. Smith made a telephone call and then paced back and forth from the restaurant entrance to Agent Luther's table. Ms. Smith assured the agent that "he will be here in a minute."

After about twenty minutes, Ms. Smith walked to a car which had just entered the parking lot. When she returned about four minutes later, Agent Luther noticed a gold car being driven away from the restaurant. Ms. Smith then handed Agent Luther a bag containing white powder. When he realized that he had not received the proper amount of cocaine, Ms. Smith said, "I'll go call him right now and we'll try to make it up and we'll make it right with you." She stated that she could not refund any of the money because she no longer had it.

Sergeant James McWright, who was parked in an adjoining parking lot during the transaction, saw Ms. Smith motion a 1987 gold Nissan Pulsar toward the rear of the building. At trial, Sergeant McWright testified that Ms. Smith entered the Pulsar and then return to the restaurant four minutes later. When he confirmed that Ms. Smith delivered cocaine to Agent Luther, Sergeant McWright directed other officers who had followed the Pulsar to initiate a stop. Sergeant McWright did not see the defendant hand Ms. Smith cocaine nor could he hear their conversation.

Officer Ed Rigsby, who arrested the defendant and read him his rights, discovered a pager and $311.00 in cash in his possession. During a search of the

3

Pulsar, he found a film container which appeared to contain cocaine between the front seats, a rock-like substance in the hatchback area of the vehicle, and plastic bags stuffed in a tennis shoe. Because Officer Rigsby picked up the film canister, no fingerprint analysis was performed. The defendant, who was not the owner of the Pulsar, had no driver's license. Officer Rigsby testified that drug dealers do not ordinarily drive their own cars because of civil forfeiture laws.

Officer Carlos Cordero was able to identify $300.00 in marked bills seized from the defendant and the other $80.00 in marked bills which were seized from Ms. Smith. Phillip Freeze, who tested the contraband, determined that the bag of powder consisted of 2.3 grams of cocaine and the film canister contained 0.2 gram of cocaine. The rock-like substance was not a controlled substance.

The thirty-three-year-old defendant testified that he met Ms. Smith while he was working as a cook at Shoney's. He maintained that he loaned her $300.00 to fix her car and that she was to repay him with her income tax refund. He claimed that Ms. Smith had paged him on the night of his arrest and that when he returned her call, she asked him to come to the restaurant so she could repay the loan. The defendant explained that he borrowed the gold Pulsar from a co-worker and drove to Shoney's to collect his money. He denied giving Ms. Smith cocaine and disclaimed ownership of the illegal drugs seized from the car.

Ms. Smith, who was a fugitive at the time of trial, did not testify.

I

The defendant first challenges the sufficiency of the evidence for the delivery conviction. On appeal, of course, the state is entitled to the strongest

4

legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

The state may use direct evidence, circumstantial evidence, or a combination of both to prove the requisite elements of a criminal offense. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). The weight to be given circumstantial evidence, and any inferences to be drawn therefrom, "are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958).

It is an offense to knowingly deliver a controlled substance. See Tenn. Code Ann. §§ 39-17-417(a)(2), (c)(2). A person acts knowingly "when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). Cocaine is a schedule II controlled substance. Tenn. Code Ann. § 39-17-408.

In our view, the jury acted within its prerogative by determining that the defendant delivered cocaine to Ms. Smith in the Shoney's parking lot. According to Agent Luther, Ms. Smith did not have the cocaine until she returned from the car

5

driven by the defendant. The defendant had $300.00 in marked bills on his person when he was arrested. From all of the circumstances established by the testimony, a rational trier of fact could have found that the defendant knowingly delivered cocaine to Ms. Smith. See Jackson v. Virginia, 443 U.S. 307 (1979). The evidence is sufficient.

## II

Next, the defendant challenges the hearsay statements of Ms. Smith to Agent Luther. He argues that the state failed to prove by a preponderance of the evidence that a conspiracy existed when the hearsay statements were made and that the statements of Ms. Smith were not made in the course of and in furtherance of the conspiracy.

Tenn R. Evid. 803(1.2)(E) permits statements offered against a party that are statements "by a co-conspirator of a party during the course of and in furtherance of the conspiracy." A conspiracy is defined as a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means. State v. Lequire, 634 S.W.2d 608, 612 (Tenn. Crim. App. 1981).

For determining admissibility of a co-conspirator's statements, the conspiracy must be proved by a preponderance of the evidence. State v. Stamper, 863 S.W.2d 404 (Tenn. 1993). In order to prove a conspiracy, it is not necessary that the state show a formal agreement between the parties to do the unlawful act; a mutual implied understanding is sufficient, although not manifested by any formal words or a written agreement. State v. Gaylor, 862 S.W.2d 546, 553 (Tenn. Crim. App. 1992). The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprises.

6

<u>Id.</u>

The trial court determined that the conduct of the defendant and Ms. Smith was sufficient to establish that a conspiracy existed by a preponderance of the evidence. We agree. Ms. Smith arranged for the delivery. She watched for the defendant and upon seeing the Pulsar, she directed him to the rear of the parking lot. She entered the vehicle and, within a few minutes, returned to the restaurant and handed Agent Luther a plastic bag containing cocaine. The conduct of the defendant and Ms. Smith demonstrates an implied understanding to deliver cocaine for sale.

Having determined that a conspiracy existed between the defendant and Ms. Smith, the statements may be admitted into evidence only if the conspiracy was in process at the time the statements were made. Tenn. R. Evid. 803(1.2)(E). "If the conspiracy had either not yet begun or had ended by the time the statement was made, the declaration is not admissible under the hearsay exception." <u>Gaylor</u>, 862 S.W.2d at 554.

The defendant argues that Ms. Smith's references to him occurred before any agreement was reached and, therefore, were not made in the course of and in furtherance of the conspiracy. He also maintains that her statements simply summarized her efforts to obtain cocaine and, in the alternative, should be classified as casual conversation.

There were several incriminating statements. When first asked if she could obtain cocaine, Ms. Smith responded, "[L]et me get in touch with my man and I'll let you know." Later, she informed Agent Luther that she had made contact with

7

"my guy," who could provide two eight-balls of cocaine that evening. When Agent Luther arrived, she explained that she had "called her guy and it was supposed to be there ...." While Agent Luther waited, she accepted his money because, "I'll have to pay when he gets here." Later, she said, "He will be here in a minute." When Agent Luther determined that the amount of cocaine he had received was inadequate, Ms, Smith replied, "I'll go call him right now and we'll try to make it up and we'll make it right with you."

Based upon the various statements, it is our conclusion the conspiracy began during the course of her initial telephone call to her "man." While Ms. Smith did not name the defendant as "her guy," the circumstances surrounding the transaction suggest that the defendant was, in fact, the man she had called earlier in the day. The statements qualify as a confirmation of the availability of cocaine for her customer and, as such, were made in furtherance of the conspiracy. The statement regarding payment is also in furtherance of the conspiracy because she needed the cash in order to acquire the cocaine from the defendant. Other statements by Ms. Smith provided reassurance that the deal would be consummated. The statements are more than idle conversation, and, in our view were properly admitted into evidence.

III

While not dissatisfied with the simple possession sentence, the defendant insists that the ten-year sentence is excessive for the felony conviction. He submits that the enhancement factors identified by the trial court were improperly applied and that the trial court ignored valid mitigating factors. The state contends that the sentence is warranted despite the incorrect application of one enhancement factor.

8

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence was the minimum in the range if there were no enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c). Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, and then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided

9

that the record supports its findings and it complies with the 1989 Act. See Ashby, 823 S.W.2d at 169. The trial court should, however, make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

The defendant testified the he had lost two jobs because of his arrest. After his release on bail, he obtained employment from Steak-Out and had a commitment from them for future employment in the event he received a suspended sentence. He arranged to live with his girlfriend, Gladys Cole, and agreed to a wage assignment to satisfy child support obligations for his ten-year-old son who resides in Arkansas. He stated that he was certain he could abide by the court's orders if granted a suspended or an alternative sentence.

The defendant, who had been convicted twice for assaulting Ms. Cole, was on probation for those offenses at the time he committed these crimes. While awaiting trial, he committed misdemeanor child abuse against Ms. Cole's eleven-year-old son.

As a Range I offender, the defendant was eligible for a sentence of eight to twelve years for the delivery of cocaine over 0.5 gram, a Class B felony. Tenn. Code Ann. §§ 39-17-417, 40-35-112(a)(2). The trial court considered the sentencing principles set forth in the 1989 Act, the evidence, the pre-sentence report, and the testimony of the defendant and found that the defendant had a prior history of criminal convictions or criminal behavior and had a history of unwillingness to comply with the conditions of a sentence involving release to the community. Tenn. Code Ann. § 40-35-114(1), (8). The trial court provided these enhancement factors "great weight." The trial court found the defendant, while not the leader in

the commission of the offense, to be a leader. Tenn. Code Ann. § 40-35-114(2).

While the defendant argued that he played a minor role in the offense, the trial court found that delivering drugs should not be characterized as a minor role. See Tenn. Code Ann. § 40-35-113(4). The trial court refused to consider his stable work history and lack of prior felony convictions as mitigating factors, because that behavior is expected of citizens. See Tenn. Code Ann. § 40-35-113(13).

The trial court found that the defendant was ineligible for probation. Community Corrections was considered but rejected given the defendant's history of violence. The trial court also found that placement on Community Corrections would deprecate the seriousness of the offense.

The defendant argues that the trial court erred in applying two enhancement factors: that the defendant was a leader in the offense and that he has a history of unwillingness to comply with a sentence involving release to the community. Tenn. Code Ann. § 40-35-114 (2), (8). The state concedes that the latter factor, Tenn. Code Ann. § 40-35-114(8), is not applicable. Although the defendant can be considered a leader, he did not have a previous history of unwillingness to comply with a sentence involving release to the community. See State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995) (There must be a demonstrated previous history of unwillingness).

The ruling in Hayes precludes consideration of the defendant's probationary status as an enhancement. That error was compounded by the placement of "great weight" on this factor. Due to the error, the defendant's sentence for delivery of over 0.5 gram of cocaine is modified from ten to nine years.

Accordingly, the judgment of conviction of the trial court is affirmed and the sentence for delivery of over 0.5 gram of cocaine is modified to nine years.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David G. Hayes, Judge


_____
Jerry L. Smith, Judge