**STATE of Tennessee, Appellee,**

v.

**Jerry Allen LEQUIRE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 1, 1981.

Permission to Appeal Denied by Supreme Court June 1, 1982.

David T. Black, Gerald Russell, Maryville, Charles Galbreath, Mark A. Schneider, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., James Richard Scroggins, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, Jerry Allen Lequire, was convicted in two (2) cases of aiding and abetting an attempt to destroy dwelling houses by placing explosives adjacent thereto. T.C.A. § 39–1403. He was sentenced to the penitentiary to serve not less than five (5) years nor more than five (5) years in each case, the sentences to be served consecutively.

The issues in this appeal are (1) whether the evidence is sufficient to support the verdict; (2) whether hearsay testimony was erroneously allowed into evidence; (3) whether it was proper for the trial court to charge the jury on the law of aiding and abetting; and (4) whether the trial court should have granted a new trial on the grounds of newly discovered evidence. We find no merit to the issues raised.

The evidence in these cases showed that on August 29, 1978, Freda Burts, a member of the City Council of Jefferson City, found a home-made type bomb about two (2) feet from the north side of her dwelling house. The bomb consisted of a clock and several sticks of dynamite. On the same date, a similar bomb was found placed against a wall of John Gibson's dwelling house. Gibson was also a City Council member.

Experts in demolition were called in to investigate these incidents and to defuse the bombs. Their investigation revealed

that the blasting caps on the bombs had exploded, but the dynamite did not explode, apparently because it was old and had gotten wet. These experts testified that the two (2) bombs were remarkably similar and looked "as if the same person" had constructed them. Additionally, it was shown that the dynamite used in each bomb bore the same "shift code" number. This number is affixed at the factory to show the date and place the dynamite was manufactured and the work shift responsible for its manufacture. The evidence established that several cases of dynamite bearing this "shift code" number had been shipped by the manufacturer to a business establishment in Jefferson City.

Two fingerprints were found on the face of the clock which was discovered at the Gibson house. A fingerprint expert identified these as being the defendant's fingerprints. These fingerprints on the face of the clock rather than on the covering of the clock face indicate that the covering was not on the clock when the fingerprints were impressed thereon. It was the opinion of this expert witness that the two (2) fingerprints were impressed on the clock at different times.

One of the State's theories was that the defendant and Franklin Park acted in concert in the planning and commission of the crimes involved herein. The State's evidence established that the defendant and Park, a Jefferson City attorney who died prior to the trial of these cases, were friends and were seen together on divers occasions leading up to the date of these crimes. The defendant frequently visited at Park's home and was seen there with Park on August 27, 1978, two (2) days before the bombs were discovered at the Gibson and Burts homes. It was shown that Park was highly incensed with the members of the City Council of Jefferson City, especially Gibson and Burts, over the appointment of Waymon Poole as Chief of Police. Park, a man of considerable temper, had a running disagreement with Waymon Poole. This evidence was introduced primarily through the testimony of John Gibson. The defendant's objection to this testimony was overruled by the trial court.

According to the testimony of John Gibson, Park had contacted him in May and June, 1978, and told him to fire Waymon Poole as Chief of Police. Park telephoned Gibson on Friday night, August 25, 1978, and again around 1:30 a. m. on Saturday, August 26, 1978. In the latter call Park told Gibson that "someone was going to get hurt." Park also advised Gibson he was holding Gibson and Freda Burts responsible for the hiring of Waymon Poole. He cursed Gibson for several minutes and then hung up.

Warren Stinson, a former employee of Park, testified that in the summer of 1978, he accompanied Park to the airport at Alcoa to meet the defendant. Stinson was admonished by Park: "Don't ask any questions." The three (3) ate together, then went to the defendant's trailer, where the defendant and Park had a private conversation out of the presence of Stinson. On August 27, 1978, Stinson and some friends went to Park's residence at Jefferson City. When they arrived, Park, the defendant, and two (2) other men were present. Park told Stinson to take his friends and "git gone."

The defendant also objected to Stinson's testimony about the remarks that Park had made to him, but the objection was overruled by the trial court.

Other evidence showed that after the investigators found the defendant's fingerprints on the clock, they went to talk to him. The defendant admitted that he and Park were good friends, and that he had spent a good deal of time at Park's home around the time the bombs were found. The investigators showed the defendant the two (2) clocks which had been found at the Gibson and Burts homes, and he denied that he had ever seen them before, had ever owned any like them, or had ever seen any like them in Park's home. He told them that Park had only electric clocks in his home.

The defendant did not testify, but offered the testimony of two (2) witnesses, appar-

ently in an attempt to explain the presence of his fingerprints on the clock found at the Gibson home.

Jackie Poore testified that he had seen the defendant at the Park home on two (2) or three (3) occasions, and that in early August, 1978, he saw on Park's kitchen table disassembled clocks similar to those used in fashioning the bombs.

Patricia Purdue, a girl friend of the defendant, testified that the defendant had introduced her to Park, and that in early August, 1978, she went to Park's home. The defendant arrived there about the same time as she did. When they went into the house, she noticed some disassembled clocks on the table in the dining room. The clocks were similar to those used in fashioning the bombs. Ms. Purdue also observed "tools and stuff" on the table, prompting her to inquire whether the clocks were being taken apart or being put back together. The defendant was in the kitchen at the time, and Ms. Purdue did not know if he heard her inquiry. Ms. Purdue picked up one of the clocks to look at it, and then handed it to the defendant who put it on the table or in a box.

The foregoing is a sufficient summary of the evidence to answer the issues raised in this appeal.

Initially, we will answer the defendant's second issue regarding whether the trial court erroneously allowed hearsay testimony into evidence. The defendant argues that the testimony of John Gibson and Warren Stinson, regarding remarks made to them by Park, was inadmissible hearsay and that by allowing Park's remarks into evidence, he was denied his Sixth Amend-

ment right of confrontation. The trial court found the testimony of these witnesses to be admissible as going to "motive." The State argues that Park's remarks to the witnesses were not hearsay because they were not introduced to prove the truth of the matters asserted therein. Also, the State insists the remarks were relevant and thus admissible to show Park's motive to harm Gibson and Burts. Further, the State says that even if the questioned remarks can be characterized as hearsay, they were still properly admitted into evidence as an exception to the hearsay rule, and that no confrontation right of the defendant has been abridged.

■ After considering the entire record, we conclude that the trial court properly allowed this questioned evidence to be considered by the jury. Park's commands to Stinson were not hearsay because they were not offered to prove the truth of the matters asserted therein. The portion of Park's remarks to Gibson that could legitimately be argued to be of a hearsay character were admissible as an exception to the hearsay rule.

The evidence in this record establishes that there was an ongoing conspiracy between Park and the defendant to commit the crimes involved herein.[1] In view of this fact, then the co-conspirator exception to the hearsay rule is applicable in these cases.

■ A conspiracy is defined as a combination between two or more persons to do a criminal or an unlawful act or a lawful act by criminal or unlawful means. *Owens v. State*, 178 Tenn. 32, 154 S.W.2d 529 (1941). Everyone entering into a conspir-

---

1. Park and the defendant had been indicted for a conspiracy to commit these crimes, but on the morning of the trial the trial court dismissed the conspiracy indictment. Later, after the evidence had been presented on the target crimes, the trial court observed that much more had been put into evidence than the court, at the time of its ruling, had supposed would be the case, and indicated that if he had been so aware his ruling would have been different. At any rate, it is of no legal significance that the conspiracy indictment was dismissed prior to the defendant's trial on the

target crimes. If a conspiracy be shown to exist, the co-conspirator exception to the hearsay rule is applicable to cases even though no conspiracy has been formally charged. *United States v. Spencer*, 415 F.2d 1301 (7th Cir. 1969); *United States v. Rinaldi*, 393 F.2d 97 (2nd Cir. cert. denied 393 U.S. 913, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968); 3 *Wharton's Criminal Evidence* § 644 (13th ed. 1973). Further, we note that T.C.A. § 39–110 provides that an aider and abettor may be convicted whether the principal felon be convicted or not.

acy is a party to every act which has before been done by the others, and to every act by the others afterward, in furtherance of the common design. The act of one is considered the act of all and, therefore, is imputable to all. *Solomon v. State,* 168 Tenn. 180, 76 S.W.2d 331 (1934). Also, where one co-conspirator commits the target crime in the absence of the other, the absent one is equally guilty as a principal. *Beck v. State,* 203 Tenn. 671, 315 S.W.2d 254 (1958); *Pierce v. State,* 130 Tenn. 24, 168 S.W. 851 (1914). Once a conspiracy has been established, evidence of any act or declaration of a conspirator during the conspiracy, and in furtherance of it, is admissible as substantive evidence against any co-conspirator on trial for the commission of the target crime. *Randolph v. State,* 570 S.W.2d 869 (Tenn.Cr.App.1978); *Evans v. State,* 557 S.W.2d 927 (Tenn.Cr.App.1977); 3 *Wharton's Criminal Evidence* § 642 (13th ed. 1973).

█ Obviously, the evidence which connects the defendant with these crimes is equally persuasive as to Park. Hence, the remarks Park made to Gibson were admissible to show his intent and motive to harm Gibson and Burts. Also, since Park and the defendant were co-conspirators, anything that Park said to Gibson (as well as to Stinson) during the conspiracy, and in furtherance of it, was equally attributable to the defendant. As such the remarks were admissible as relevant evidence for the jury's consideration in judging the defendant's culpability for the target crimes.

█ Further, the law is that even though the declarations of the co-conspirator may be of a hearsay nature, the admission into evidence of such declarations do not violate an accused's right of confrontation under the Sixth Amendment. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Thus, there was no abridgement of the defendant's Sixth Amendment right of confrontation. Also, there is no *Bruton* problem in the present case. The United States Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), does not prohibit the use as evidence a co-conspirator's statements against another co-conspirator. *United States v. Kendricks,* 623 F.2d 1165 (6th Cir. 1980).

Therefore, we hold that Gibson's and Stinson's testimony about Park's remarks to them was properly admitted into evidence. We find the defendant has not been constitutionally deprived in this regard.

Next, in reviewing the defendant's challenge to the sufficiency of the evidence, we must be guided by several well recognized principles of law, to-wit:

█ A guilty verdict by the jury approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn. 1973). Findings of guilt in criminal actions will not be set aside unless the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. *T.R.A.P.* 13(e); *State v. Cabbage, supra.*

█ All persons present, aiding and abetting, or ready and consenting to aid and abet in any criminal offense, shall be deemed principal offenders and punished as such. T.C.A. § 39–109 (1975). To be convicted of aiding and abetting a crime, there must be some evidence of participation in the crime, but that evidence can be circumstantial. *Flippen v. State,* 211 Tenn. 507, 365 S.W.2d 895 (1963). Only a constructive presence at the crime is necessary to charge one as an aider and abettor. *Watson v. State,* 158 Tenn. 212, 12 S.W.2d 375 (1928); *Pierce v. State, supra.*

In the present case, as shown in our recitation of the facts, Franklin Park was angry at Gibson and Burks over the appoint-

ment of Waymon Poole as Chief of Police and had made threats against them. The defendant and Park were good friends and were observed together on frequent occasions for some period of time prior to the date of the crimes. Disassembled clocks, similar to the ones used in fashioning the bombs, were seen at the home of Franklin Park. This evidence was established by the defendant's own witnesses. One of the witnesses testified that when she saw these disassembled clocks, both Park and the defendant were present at Park's home. The defendant was seen at Park's home two (2) days prior to the date the bombs were found. The fingerprints of the defendant were on the clock found at the Gibson home. The defendant's attempt through his witness, Patricia Purdue, to explain the presence of his fingerprints on the clock must be considered both in light of his denial to the investigators that he had ever seen these or similar clocks before at Park's home, and in light of the expert testimony that the two (2) fingerprints on the clock were impressed at different times. When so considered, it is clear that the jury was warranted in rejecting the defendant's explanation of the presence of his fingerprints on the clock.

The weight to be given to fingerprint evidence is for the jury's determination. *Jamison v. State,* 209 Tenn. 426, 354 S.W.2d 252 (1962). Also, even though fingerprint evidence alone may be sufficient to support a conviction, *Jamison v. State, supra,* there is other strong circumstantial evidence linking the defendant to these crimes.

Further, we must reject the defendant's insistence that the evidence linking him to the bomb found at the Gibson house does not connect him to the bomb found at the Burts house. The contents of and the construction of the two (2) bombs were so strikingly similar as to fully warrant the jury in finding beyond a reasonable doubt that the persons responsible for the crime at the Gibson house were also responsible for the crime at the Burts house.

The evidence in these cases created a strong case of circumstantial evidence against the defendant. A crime may be shown by circumstantial evidence alone. *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451 (1958). In reviewing a conviction based upon circumstantial evidence, the evidence is weighed in the same manner as direct evidence is weighed, that is, to determine if the evidence is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. *See State v. Brown,* 551 S.W.2d 329 (Tenn.1977).

In our opinion, the defendant's fingerprints on the clock found at the Gibson home along with the other implicating circumstantial evidence present in these cases sufficiently warranted the jury in finding that the defendant either placed, or was present, actually or constructively, aiding and abetting the person who did place, these bombs at the Gibson and Burts homes. Whether the defendant placed the bombs himself or aided and abetted another who did such is of no legal significance, because in either event, he is deemed a principal and punished as such. T.C.A. § 39–109; *Wade v. State,* 174 Tenn. 248, 124 S.W.2d 710 (1939).

We conclude that the evidence in these cases is more than sufficient to satisfy the requirement of Rule 13(e), *T.R.A.P.* Thus, the defendant's challenge to the evidence is not meritorious.

The defendant's third issue is that the trial court erred in charging the jury on the law of aiding and abetting. The defendant argues that since he was indicted as a principal he could not be found guilty as an aider and abettor because there was no proof that the criminal act was committed by a principal other than the defendant, and thus he could not aid and abet himself. Therefore, he insists that the trial court erred by charging the law on aiding and abetting.

The purpose and effect of T.C.A. § 39–109, previously referred to in this opinion, was to abolish the distinction between principals in the first degree and

principals in the second degree. *Rockwell v. State*, 550 S.W.2d 250 (Tenn.Cr.App. 1976). Under this statute, both are treated identically and are deemed principal offenders, and punished as such. The evidence in these cases warranted the jury in finding that the defendant was not the only person who was culpable in these crimes, and it was incumbent on the trial judge to instruct the jury on the law applicable to the case. Thus, we hold that the trial court properly instructed the jury on the law of aiding and abetting. We do note that the jury found the defendant guilty of "aiding and abetting" the attempted destruction of the dwelling houses. However, the words "aiding and abetting" may be rejected as surplusage so long as the verdicts are responsive to the indictments. *Wade v. State, supra.* We find the verdicts in these cases to be responsive to the indictments and the defendant's convictions to be valid.

The defendant also argues under this issue the claim of a constitutional infringement on the basis of lack of notice in the indictment of the charge of aiding and abetting. We find no merit to this complaint either. When the evidence shows an accused aided and abetted another in the commission of a crime, he is a principal offender and a charge in the indictment against him as a principal carries with it all the nuances of the offense. Hence, the indictment provided adequate notice of the charge to the defendant. *Hall v. State*, 584 S.W.2d 819 (Tenn.Cr.App.1979).

In his final complaint, the defendant says the trial court erred in not granting a new trial on the basis of newly discovered evidence.

At the motion for a new trial, the defendant presented affidavits of two (2) people who swore therein that they saw some person other than the defendant working on clocks at Franklin Park's home. On this basis, the defendant says the trial court should have granted him a new trial.

At most, this evidence is contradictory of the evidence introduced at the trial. Where evidence tends only to contradict or

impeach the trial evidence, a new trial based on such alleged newly discovered evidence is not warranted. *Hawkins v. State*, 220 Tenn. 383, 417 S.W.2d 774 (1967). Unless it can be said the evidence is likely to produce a different result, the denial of a new trial on this basis is proper. *Rosenthal v. State*, 200 Tenn. 178, 292 S.W.2d 1 (1956); *Taylor v. State*, 180 Tenn. 62, 171 S.W.2d 403 (1943). There is nothing in the affidavits to suggest that the defendant did not participate in the construction of the bombs, and in our opinion, the alleged new evidence would not likely produce a different result at a new trial.

We find no merit to any of the issues raised by the defendant, and thus his complaints are overruled. The judgments of the trial court are affirmed.

O'BRIEN, J., and JOHN D. TEMPLETON, Special Judge, concur.