**STATE of Tennessee, Appellee,**

v.

**Allen THOMAS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 23, 1985.

Permission to Appeal Denied by the Supreme Court April 8, 1985.

Kimberly J. Dean, Asst. Atty. Gen., Nashville, James Pryor, Asst. Dist. Atty. Gen., Greeneville, for appellee.

J. Ronnie Greer, Greeneville, Charles R. Terry, Morristown, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Allen Thomas, was convicted on two counts of misrepresenting a substance to be a controlled substance. He was sentenced to consecutive one-year terms of incarceration and was fined $50 for each conviction. On appeal, he challenges the sufficiency of the evidence, the admissibility of statements made by a nontestifying co-defendant, the alleged failure of the state to disclose exculpatory evidence, and the propriety of the state's alleged effort to prevent the co-defendant from testifying in the defendant's behalf. We find no merit to these issues. The trial court's judgment is therefore affirmed but modified as detailed below.

The chief witness against the defendant at trial was Brian Hitch, an undercover agent for the Greeneville Police Department and the Greene County Sheriff's Department. Hitch testified that he made the acquaintance of Rocky Cutshaw and arranged with him to purchase a number of Quaaludes. On October 21, 1983, Hitch met Cutshaw at the Swann Acres Trailer Park and walked with him to trailer 14. Cutshaw then asked the trailer's occupant, identified by Hitch as the defendant, "Do you have the Quaaludes?" The defendant reached inside the trailer and handed Cutshaw a baggie containing 68 white tablets. Cutshaw later gave the baggie to Hitch in exchange for $225.

Hitch was informed by Cutshaw a few days later that the defendant could not sell additional Quaaludes to him unless the agent paid Cutshaw in advance for the drugs. Hitch thus forwarded $280 to Cutshaw and arranged to make a second purchase. On October 26, 1983, Hitch again visited trailer 14 and asked the defendant whether Rocky Cutshaw was present.

When Hitch asked Cutshaw, "[H]ow's everything going, or you know, where's the 'ludes?" the defendant produced a bag of white tablets that was then given to Cutshaw, who handed it to Hitch. Additional efforts to purchase Quaaludes from the defendant proved to be unsuccessful, however.

Other trial testimony was offered by Martina Crosby, a forensic chemist for the TBI. She examined the tablets that had been bought by Hitch but found no controlled substances in the tablets.

■ The defendant offered a defense of alibi which the jury, as is its prerogative, chose to discredit. *Forbes v. State*, 559 S.W.2d 318, 324 (Tenn.1977). The evidence accredited by the jury was sufficient to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt of misrepresenting a substance to be a controlled substance. Tennessee Rule of Appellate Procedure 13(e). The challenge to the sufficiency of the evidence is without merit.

■ The defendant next contends that certain statements made by Rocky Cutshaw to agent Hitch were hearsay and were erroneously admitted into evidence. This court, however, has held consistently that evidence of a declaration made by a conspirator during a conspiracy, and in furtherance of it, is admissible as substantive evidence against any co-conspirator. *State v. Wiseman*, 643 S.W.2d 354, 373 (Tenn. Crim.App.1982). If a conspiracy is shown to exist, the co-conspirator exception to the hearsay rule is applicable even though no conspiracy has been formally charged. *State v. Lequire*, 634 S.W.2d 608, 612, n. 1 (Tenn.Crim.App.1981). A conspiracy is defined as a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means. *Id.* at 612.

■ Clearly, a conspiracy has been shown to exist in this case. Furthermore, evidence of that conspiracy was established by the *actions* of the co-conspirators with-

out reference to any statements made by Cutshaw. The allegedly inadmissible statements thus fall within the co-conspirator exception to the hearsay rule and were properly admitted as evidence at trial.

■ The defendant next contends that a new trial should have been ordered because the prosecution failed to disclose exculpatory evidence. He insists that Rocky Cutshaw's attorney orally informed the District Attorney's office that his client's testimony would not be beneficial to the state's theory of the case and could exonerate the defendant.

The prosecutor, however, denied that he had ever spoken to Cutshaw or Cutshaw's attorney or that he had been made aware of any exculpatory statements given by the co-defendant. Moreover, both the prosecutor and the trial judge examined the state's file of the case and were unable to locate any exculpatory evidence which should have been made available to the defendant. The trial judge did not err in failing to grant a new trial on this ground.

In his final issue, the defendant alleges that his constitutional right to call witnesses in his defense was abridged when the state entered into a plea agreement with Rocky Cutshaw that included a promise by Cutshaw not to testify in the defendant's behalf. In support of this allegation, the defendant filed an affidavit from Cutshaw's attorney as an attachment to his motion for a new trial.

We have examined that affidavit, and we find that it does not support defense counsels' contention. The affidavit indicates only that during plea negotiations between the state and Cutshaw's attorney, the possibility of Cutshaw's testifying against the defendant was raised but that "Cutshaw advised me [his attorney] that he could not testify for the State as part of any agreement reached with them because his testimony could possibly be beneficial [to] his co-defendant, Allen Thomas." The affidavit by Cutshaw's attorney, obviously prepared by Thomas's attorney, originally stated that "[i]t was part of our plea agreement with the State that Rocky Cutshaw not testify either for the State or the defendant in this case." The final ten words were crossed through, however, and a period inserted after the word "testify," ostensibly by the affiant, so that this sentence as sworn to reads, "It was part of our plea agreement ... that Rocky Cutshaw not testify." Other similar deletions and interlineations indicate clearly that Cutshaw's attorney was unwilling to swear that his client had been "gagged" by the District Attorney and prevented from testifying in Thomas's behalf as part of the plea arrangement.

Moreover, neither Cutshaw nor his attorney were called as witnesses at the hearing on the motion for a new trial and asked to clarify the matters contained in the affidavit. Thus, the record on this point consists entirely of the affidavit, in its somewhat ambiguous state, and the prosecutor's adamant denial of any wrongdoing. The trial court specifically found that the prosecutor had not acted improperly, and the record before us fully supports this finding. Furthermore, as the trial judge pointed out, "the defendant was free to call the co-defendant as a witness" at trial, but he failed to make any apparent effort to do so.

The trial judge also noted that "charges [of impropriety] such as this are a great concern to the Court and if there is any real indication that they were there the Court would ... not only grant a new trial, but take whatever action is necessary ..." to protect the defendant's rights. We, too, note the severity of a charge of prosecutorial "gagging" of a potential defense witness, and we concur in the remarks made by the trial court in this regard. But like the trial judge, we are unable to find a sufficient basis in the record to support that charge.

■ Finding no reversible error in connection with the issues presented for review, we affirm the defendant's convictions. The trial court's judgment must be modified in one respect, however. In reporting its verdict, the jury specifically stated that it had not levied a fine upon the

defendant. In imposing sentence, the trial judge nevertheless fined the defendant $50 for each of the two convictions.

T.C.A. § 40–35–301(b) provides that in the absence of a waiver of the right to have a jury fix the fine, the trial court may not impose a fine which exceeds that fixed by the jury. Because the defendant did not waive his right to have the jury assess any fine and because no such fine was imposed by the jury, the judgment must be modified so as to delete the reference to the two $50 fines.

Affirmed as modified.

DUNCAN and SCOTT, JJ., concur.