# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### JANUARY 1999 SESSION



FILED

April 30, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9712-CR-00534 |
| | ) | |
| vs. | ) | Sullivan County |
| | ) | |
| **GARY WAYNE HALL,** | ) | Hon. Phyllis H. Miller, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Child Abuse) |
| | ) | |

FOR THE APPELLANT:

**RICHARD A. TATE (at trial)**
Asst. District Public Defender
P.O. Box 839
Blountville, TN  37617

**JULIE A. MARTIN (on appeal)**
Attorney at Law
P.O. Box 426
Knoxville, TN  37901

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELLEN  H. POLLACK**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**H. GREELEY WELLS, JR.**
District Attorney General

**BARRY STAUBUS**
**TERESA MURRAY SMITH**
Asst. District Attorneys General
P.O. Box 526
Blountville, TN  37617-0526

OPINION FILED:_____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Gary Wayne Hall, appeals from the conviction of aggravated child abuse he received at the conclusion of a jury trial in the Sullivan County Criminal Court. The defendant is presently serving a 24-year incarcerative sentence in the Department of Correction. In this appeal, the defendant claims that the evidence at trial insufficiently supports the jury's finding of his guilt beyond a reasonable doubt and that the sentence imposed is excessive. Following a review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

The 25-year-old defendant and 23-year-old Laura McGhee shared a platonic friendship in late 1996 and early 1997. In November 1996, McGhee delivered the victim, John Daniel Hunley. After Hunley's birth, the defendant began helping McGhee with child care. At first, the defendant assisted in McGhee's presence, and eventually, by January 1997, McGhee would leave the victim in the defendant's care for several hours three to four times a week while she went to work.

In late January, the victim became very ill. After believing the victim had a viral infection, and later epilepsy, medical personnel eventually diagnosed the victim's condition as resulting from "non-accidental trauma" or child abuse. The defendant was interviewed by law enforcement personnel several times and admitted shaking, hitting, dropping, and tossing the victim. In each statement the defendant gave, he provided more information about the nature and severity of the abuse inflicted on the victim. The defendant maintained, however, that he had not meant to hurt the victim and was having a hard time coming to terms with what he might have done to the victim.

2

At trial, the state presented evidence that the victim, who had been born without any known physical or mental impairments, now suffers developmental delays and may never walk, talk or live independently. Medical personnel opined that the abuse suffered by the victim is the cause of these impairments.

The defense centered on proof, via the defendant's testimony, that the defendant cared about the victim as if he were his own child and would never knowingly harm him. The defendant admitted, in his testimony and in his pretrial statements, that he had vigorously shaken the victim, slapped the victim on the head, dropped the victim several inches into his car seat which caused the victim to hit his head on the floor or the car seat, and tossed the victim into his crib from the defendant's chest height. The defendant maintained, however, that he had not meant to hurt the victim and took all of these actions other than dropping the victim into the car seat in efforts to assuage the victim's colic. He claimed he had accidentally dropped the victim into the car seat after the victim startled him as he was lifting the victim.

The jury found the defendant guilty of the charged crime of aggravated child abuse and set a fine of $10,000. At the sentencing hearing, the trial court imposed a near-maximum sentence of 24 years and fined the defendant $10,000.

Against this backdrop, the defendant appeals.

## I

In his first issue, the defendant challenges the sufficiency of the convicting evidence. Specifically, he claims that the proof does not support a finding that he possessed a knowing *mens rea* beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

Moreover, a criminal offense may be established exclusively by circumstantial evidence.   Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396.   In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835

4

(Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

In pertinent part, aggravated child abuse is committed when "[a]ny person . . . knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare" and the act of abuse causes serious bodily injury.[1]  Tenn. Code Ann. § 39-15-401(a), -402(a)(1) (1997).

As relevant to the offense of aggravated child abuse, the *mens rea* of "knowing" is established "with respect to the result of a person's conduct when the person is aware that the conduct is reasonably certain to cause the result."  Tenn. Code Ann. § 39-13-302(b) (1997); see State v. John Adams, No. 02C01-9707-CR-00246, slip op. at 7 (Tenn. Crim. App., Jackson, July 14, 1998), ltd. perm. app. granted on other grounds (Tenn. 1999).

Viewing the evidence of the case at bar in the light most favorable to the state, we find the evidence sufficient to support a finding of the defendant's guilt beyond a reasonable doubt.  The victim was given a diagnosis of "nonaccidental trauma."  The medical experts testified about the amounts and types of force necessary to cause the victim's injuries.  There was expert testimony that the

---

[1]If the victim is six years of age or less, as is the victim in this case, the penalty is elevated from a Class B felony to a Class A felony.  Tenn. Code Ann. § 39-15-402(b) (1997).

5

victim's retinal hemorrhages were consistent with "very violent, forcible shaking," not rocking, putting the child on one's knee, or gently moving the child back and forth. The skull fractures were consistent with a "blow" to the head. The head trauma and resultant disability were consistent with vigorous shaking of three to four minutes duration, being dropped into a crib, being dropped into a car seat, and being slapped on top of the head. Another expert concurred that forceful shaking lasting two to four minutes could cause the brain injury and opined that based upon the amount of bleeding the victim had, the shaking "would have to be as hard as you could do it, just about. You would have to really be using as much force as you could potentially do to cause bleeding inside the head." Calling into doubt any claim of accidental dropping in the home, an expert opined that a fall would not result in as much internal bleeding as the victim had unless it was from ten to twelve feet onto concrete. However, the injury could result from a "forceful sort of throw and hit" against an object. Yet another expert opined that the brain injury would result from "fairly vigorous shaking" rather than mere rocking, putting the child on one's knee, or even "normal" dropping, although dropping was a possibility.

Although the defendant claimed any injuries to the victim were accidental, the jury was free to accept or reject his explanation of the events. Nevertheless, in his pretrial statements the defendant acknowledged hitting, rocking, shaking, tossing and dropping the victim. He said he tossed the victim into his crib "on purpose" rather than by accident. At trial, the state called the defendant's credibility into question via introduction of several statements in which the defendant admitted progressively to greater amounts of force and different forcible actions and events involving the victim. Two of the defendant's former co-workers, who testified about the defendant's truthfulness and good reputation, were impeached by evidence that the defendant was not forthcoming with them about the nature of the accusations against him. Both of the defendant's former co-workers

6

were parents, and both testified that common sense dictated that one not throw, drop or shake a child. The jury viewed a videotape of the defendant demonstrating and describing some of his actions relative to the victim.

The jury was free to assess the defendant's claim of accident on the one hand against the state's evidence of the degree and duration of force necessary to cause the victim's injuries on the other. Although this court does not reweigh the evidence, it is apparent from the record that the defendant's claim of accidental injury is incredible in the face of the magnitude of the force and the nature of actions necessary to cause the victim's very serious injuries. The only reasonable inference is that the defendant, having engaged in such forceful and egregious activity, was necessarily aware that this type of conduct was reasonably certain to cause serious bodily injury. See Tenn. Code Ann. § 39-13-302(b) (1997); cf. State v. David Palmer, No. 01C01-9607-CR-00285, slip op. at 12 (Tenn. Crim. App., Nashville, Nov. 20, 1997) (jury free to disregard defense of accident in favor of contrary medical testimony), perm. app. denied (Tenn. 1998). Accordingly, the evidence sufficiently supports the jury's finding that the defendant knowingly committed the crime. See Crawford, 470 S.W.2d at 613; McAfee, 737 S.W.2d at 305.

## II

In his remaining issue, the defendant claims that the 24-year sentence imposed by the trial court is too lengthy given the applicable enhancement and mitigating factors. In determining whether the trial court has properly sentenced an individual, this court engages in a *de novo* review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting

7

our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 1998); Tenn. Code Ann. § 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

In the case at bar, the trial court misapplied a mitigating factor;[2] therefore, our review of its sentencing determination is *de novo* without the presumption of correctness.

Turning first to enhancement factors, the record reflects that the defendant has a prior history of criminal convictions. See Tenn. Code Ann. § 40-35-114(1) (1997). The defendant concedes as much in his brief. His convictions are not numerous and are for comparatively less serious offenses; therefore, this factor is entitled to no more than moderate weight.

The victim of this offense was particularly vulnerable due to his age. See Tenn. Code Ann. § 40-35-114(4) (1997). Although age under eighteen years is an element of the offense and age of six years or less is a punishment enhancement, see Tenn. Code Ann. § 39-15-401(a), -402(a), (b) (1997), the two and one-half month old victim was, due to his natural physical and mental limitations associated with his age, *particularly* vulnerable because he was unable to summon help, resist or testify. See State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996);

---

[2]The trial court incorrectly applied mitigating factor (2), "[t]he defendant acted under strong provocation[.]" See Tenn. Code Ann. § 40-35-113(2) (1997).

8

State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). In the present case, the defendant testified about how "helpless" and dependent on others the victim was. The young victim weighed approximately twelve pounds at the time the 422 pound defendant abused him. At this young age, the victim was unable to communicate his needs to the defendant verbally. This factor is appropriately entitled to great weight. Accord State v. John Adams, No. 02C01-9707-CR-00246, slip op. at 13 (Tenn. Crim. App., Jackson, July 14, 1998) (one month old victim of aggravated child abuse was particularly vulnerable).

The trial court applied factor (5), that the defendant treated the victim with exceptional cruelty. See Tenn. Code Ann. § 40-35-115(5) (1997). The supreme court has said that the relevant inquiry for determining the applicability of this enhancement factor is whether the facts demonstrate "a culpability distinct from and appreciably greater than that incident to" the conviction crime. State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997) (quoting State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994)). On de novo review, we agree with the trial court that this factor applies. The state proved serious bodily injury constituting the crime of aggravated child abuse. It appears that the injuries were inflicted over the course of several days, rather than on only one occasion. The state proved not only that the victim's injuries were serious but also that they were life-threatening. Contrary to the defendant's claim that he wanted to help in determining what was wrong with the victim, he initially was not forthcoming about the nature of the victim's injuries even though he knew the victim was hospitalized. Furthermore, the trial court doubted that the defendant had ever fully admitted the extent of the abuse inflicted on the victim. Accord State v. Leggs, 955 S.W.2d 845 (Tenn. Crim. App. 1997) ("The injuries suggest a more extensive and protracted beating than the two kicks [sufficient to establish the crime] admitted to by Appellant."). This factor is entitled to moderate weight.

9

The defendant concedes he has "a previous history of unwillingness to comply with the conditions of release into the community" based upon his commission of additional offenses while on probation. See Tenn. Code Ann. § 40-35-114(8) (1997). This factor is appropriate and is entitled to moderate weight because the defendant has committed further offenses by writing worthless checks while on probation for that same crime on multiple occasions.

The defendant also concedes he abused a position of private trust in committing the offense. See Tenn. Code Ann. § 40-35-114(15) (1997). He is correct. He was entrusted by his best friend with the care of her two and one-half month old child, but he breached the confidence and trust she placed in him by abusing the child so severely that the child now faces a life of mental and physical impairment. This factor weighs heavily in our sentencing determination.

The defendant appropriately concedes that the victim suffered permanent impairment as a result of the aggravated child abuse inflicted. See Tenn. Code Ann. § 40-35-114(18) (1997). We weigh this factor heavily in accord with the severity of injuries inflicted.

The final applicable enhancement factor is that if immediate medical treatment had not been obtained, such injuries "would have probably resulted in the death of the victim . . . ." See Tenn. Code Ann. § 40-35-114(19) (1997). It is apparent from the record that the victim's injuries were severe and life-threatening. The victim's seizures were so severe that medical personnel found it necessary to medicate him to the point of being comatose in order to bring his seizure activity under control. At one point, the victim stopped breathing while hospitalized. One physician estimated the risk of fatality to the victim during his hospitalization was 20 to 70 percent. This factor is entitled to moderate weight.

10

Turning next to the mitigating factors, the defendant urges us to consider that the defendant acted under strong provocation. See Tenn. Code Ann. § 40-35-113(2) (1997). In this vein, the defendant presented plausible evidence of his inexperience with children. Caring for the victim proved challenging to him because the victim was colicky. The defendant became nervous and alarmed by his lack of success in consoling the victim. The defendant's interpretation of this factor is a novel one, and he has advanced no precedent for this unique application. The facts he advances are more appropriately considered as proof of mitigating factor (11), that the defendant committed the crime under such unique circumstances that it is unlikely that he was motivated by a sustained intent to violate the law. See Tenn. Code Ann. § 40-35-113(11) (1997). Accordingly, we give mitigating factor (11) moderate weight.

The defendant contends the trial court should have considered two miscellaneous mitigating factors. See Tenn. Code Ann. § 40-35-113(13) (1997). First, he claims he should receive the benefit of mitigation because he assisted in the investigation of the offense. He cooperated with the investigation to a limited extent, and he should receive no more than slight mitigation in view of his repeated lack of complete candor with the detectives about the abuse.

The defendant also claims he should receive the benefit of mitigation based upon his remorse for the crime. We agree with the trial court's finding that the defendant was only "somewhat remorseful" based upon his initial lack of candor with the investigating officer and denial of responsibility over a period of time. This factor should receive only limited weight.

The presumptive sentence for this Class A felony is the midpoint within the range. See Tenn. Code Ann. § 40-35-210(c) (1997). Considering the

relevant principles and weighing the enhancement factors against the mitigating factors, we find a sentence of 24 years appropriate for the defendant's crime.

In summary, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE