IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 9, 2014

## NATHANIEL CARSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-260      Seth Norman, Judge**

**No. M2014-00422-CCA-R3-PC - Filed November 14, 2014**

The Petitioner, Nathaniel Carson, appeals as of right from the Davidson County Criminal Court's denial of his petition for post-conviction relief. On appeal, the Petitioner contends that his trial counsel was ineffective for failing to call a second alibi witness and failing to request a bill of particulars. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Joseph L. Morrissey, Jr., Nashville, Tennessee, for the appellant, Nathaniel P. Carson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Robert E. McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of two counts of first degree felony murder and two counts of especially aggravated robbery. The trial court sentenced him to concurrent life sentences for the murder convictions and fifteen years for the especially aggravated robbery convictions. This court affirmed the Petitioner's convictions on direct appeal. State v. Nathaniel P. Carson, No. M2010-20419-CCA-R3-CD, 2012 WL 1484188 (Tenn. Crim. App. Apr. 27, 2012).

The Petitioner's convictions arose from the August 26, 2008 murder and robbery of Pierre Colas and his sister Marie Colas[1] in Pierre's East Nashville home. Both were shot; Pierre died almost immediately from a gunshot wound to the head, and Marie died in the hospital several days later as a result of her injuries. Id. at *8, 9. In January 2009, the Davidson County Grand Jury indicted the Petitioner, along with co-defendants George Cody, Lavonta Churchwell, Gennyfer Hutcheson, Michael Holloway, and Thomas Reed, for two counts of first degree premeditated murder, two counts of first degree felony murder, two counts of especially aggravated robbery, two counts of identity theft, three counts of forgery, and two counts of attempted forgery. On February 6, 2009, the indictment was amended to charge the Petitioner only with two counts of felony murder and two counts of especially aggravated robbery. The Petitioner was tried separately from his co-defendants.

On direct appeal, this Court summarized the bulk of the evidence introduced against the Petitioner at trial as follows:

About 9:15 p.m. on August 26, 2008, Cody entered the Colas house, robbed the victims, and shot them. Less than two hours after the shootings, the [Petitioner] telephoned the La Quinta Inn, where Thomas Reed and Michael Holloway were staying. Cody telephoned Reed and spoke with Holloway about using some credit cards. When Cody arrived at the La Quinta Inn to pick up Holloway and Reed, the [Petitioner] was with him. The four of them went to Cody's house, and the [Petitioner] and Cody talked privately for about ten minutes. Then the [Petitioner] left. In the early morning hours of August 29, 2008, the police arrested Cody at his home. The [Petitioner] telephoned Cody repeatedly and showed up at Cody's house, trying to find out what was happening. The [Petitioner] voluntarily spoke with the police on September 2, and denied having any contact with Cody prior to the shootings. However, the State introduced the [Petitioner's] cell phone records into evidence, showing that the appellant spoke with Cody on numerous occasions in the days and minutes before the shootings. After the [Petitioner's] arrest, he learned Maurice Body was giving information to the police about the Colas case and

_____

[1]Because the victims share a surname, we will refer to them by their first names for clarity.

conspired with several other jail inmates to kill Body. According to the [Petitioner's] cellmate, Gregory Chafos, the [Petitioner] acknowledged that he "gave them the credit cards and . . . told them what had happened."

Carson, 2012 WL 1484188, at *11.

Margaret McGatha testified on behalf of the Petitioner at trial. Ms. McGatha testified that the Petitioner was living with her at the time of the shootings and that on the night of August 26, 2008, she went to bed between 9:00 p.m. and 10:00 p.m. Id. at *9. She testified that the Petitioner was in the back yard at that time. Id. She further testified that when she awoke around midnight, the Petitioner was watching television in the living room. Id. On cross-examination, Ms. McGatha conceded that she would not have known if Petitioner had left her home between 10:00 p.m. and 12:00 a.m. Id.

Following his direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief on December 3, 2012. The Petitioner alleged that the indictments failed to meet constitutional and statutory standards because they stated legal conclusions and failed to provide him with notice of the charges against him. The post-conviction court appointed counsel, and an amended petition was filed on September 5, 2013. The amended petition adopted the arguments made by the Petitioner in his pro se petition. The amended petition further alleged that the Petitioner received ineffective assistance of counsel based on trial counsel's failure to request a bill of particulars and failure to call a second alibi witness. The post-conviction court held an evidentiary hearing on November 25, 2013.

At the hearing, the Petitioner testified that although he was aware of the charges in the indictment, he did not understand the extent of the charges against him. The Petitioner testified that he did not know what felony murder was at the time of the trial and that if he had known "exactly what [he] was going up against," he "probably" would have accepted a plea bargain. According to the Petitioner, trial counsel, "in so many words," told the Petitioner that "the State really didn't have any case" and that "[t]here [was] no way [he] could be convicted of felony murder and especially aggravated robbery."

The Petitioner further testified that he wanted his brother, Orian Thomas, called as a witness to strengthen his alibi. The Petitioner testified that trial counsel told him that Mr. Thomas would not make a good witness because he seemed "kind of loopy." According to the Petitioner, Mr. Thomas's testimony regarding the Petitioner's whereabouts at the time of the shootings, coupled with Ms. McGatha's testimony, would have been "critical" to establishing that he was not at the crime scene. The Petitioner also testified that he had loaned someone else his cell phone at the time of the murders and that he was not the person who called Cody in the time period surrounding the shootings.

Mr. Thomas testified that on August 26, 2008, he went to the house of the Petitioner's girlfriend. He testified that when the Petitioner answered the door to let Mr. Thomas into the house, he was in possession of his cell phone and was actually talking on it. Mr. Thomas stated that he was in the backyard when he heard gunshots, and shortly thereafter the Petitioner came out of the house and into the backyard. Mr. Thomas further testified that when the Petitioner came into the backyard, Mr. Thomas asked him whether he heard gunshots, and the Petitioner responded that he had not.

Trial counsel testified that he had been licensed to practice law for twenty years and that almost all of his practice was in criminal law. Trial counsel testified that although he could not remember why he did not call Orian Thomas to the stand, it was probably because he already had an alibi witness, Ms. McGatha. He further testified that he might have subpoenaed Mr. Thomas initially, and then changed his mind about calling him as a witness. He stated that he "more than likely" would have discussed this change with the Petitioner.

When asked whether he would have likely explained the Petitioner's potential liability based on a theory of criminal responsibility, trial counsel responded, "Absolutely." He agreed that the reason he would have given this explanation was because the Petitioner had been charged in a multi-count indictment with several co-defendants. Trial counsel testified that the Petitioner was not the first co-defendant to go to trial and that he kept up with the related cases as well as their outcomes. Trial counsel further testified that he did not file a bill of particulars because, to the best of his memory, he had open-file discovery from the State, and "[he] wasn't aware of any information that . . . needed filling in." According to trial counsel, he advised the Petitioner to accept the plea agreement offered by the State, and he explained the likelihood that the Petitioner would be convicted if he proceeded to trial.

On February 26, 2014, the post-conviction court entered an order denying the Petitioner post-conviction relief. The post-conviction court stated that Mr. Thomas's testimony conflicted with some of the Petitioner's own testimony at the post-conviction hearing. Furthermore, the court found that the Petitioner's alibi would not have been strengthened by Mr. Thomas's testimony. The post-conviction court also found that the Petitioner was adequately informed of the charges and evidence against him and was thus capable of making an informed decision about whether to proceed to trial.

## ANALYSIS

The Petitioner contends that the post-conviction court's ruling that he did not receive ineffective assistance of counsel is erroneous. The Petitioner argues that trial counsel's representation was ineffective because he failed to call a second alibi witness and also because he failed to demand a bill of particulars. The State responds that trial counsel's

decision not to call the second alibi witness was a reasonable tactical decision and that Mr. Thomas's testimony would not have assisted the Petitioner at trial. The State further responds that the Petitioner has failed to support his claim that trial counsel should have filed a motion for a bill of particulars with relevant law. Additionally, the State responds that the Petitioner has failed to prove any deficiency or prejudice resulting from the failure to request a bill of particulars. We agree with the State.

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Strickland, 466 U.S. at 689.

The Petitioner first asserts that trial counsel should have called his brother, Orian Thomas, to testify as an abili witness. "When a petitioner presents at the post-conviction hearing a witness he claims should have been called at trial, the post-conviction court must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008). The post-conviction court may find that trial counsel's performance was not deficient by concluding either that the proffered testimony would not have been admissible at trial or that "it would not have materially aided the petitioner's defense at trial." Id. (emphasis added).

Trial counsel testified at the post-conviction hearing that although he could not remember exactly why he chose not to call Mr. Thomas, it was probably because he already had an alibi witness, Ms. McGatha. The Petitioner testified that trial counsel did not want to call Mr. Thomas as a witness because he was "kind of loopy." Also, as noted by the post-conviction court, neither Ms. McGatha nor Orian Thomas were physically in the presence of the Petitioner at the time of the shootings. Ms. McGatha testified at trial that the Petitioner was in her backyard during the time in question, while Mr. Thomas testified that the Petitioner was in the house when Mr. Thomas heard gunshots and that the Petitioner did not come out into the backyard until shortly thereafter. Furthermore, at the post-conviction hearing, Mr. Thomas contradicted the Petitioner's own testimony that he was not in possession of his cell phone at the time of the shootings. The Petitioner has failed to show that Mr. Thomas's testimony would have materially aided his defense or that trial counsel's decision not to call Mr. Thomas as a witness was unreasonable.

The Petitioner next contends that trial counsel was ineffective for failing to request a bill of particulars. Initially, we note that the Petitioner has failed to support this argument with citation to any authority, as required by Tennessee Rule of Appellate Procedure 27 (a)(7)(A). Nevertheless, we will address the Petitioner's argument on the merits. Tennessee Rule of Criminal Procedure 7 (c) states that "[o]n defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." One of the purposes of a bill of particulars is to provide "a defendant with information about the details of the charge against him if this is necessary to the preparation of his defense." State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991) (emphasis added) (quoting State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984)). Furthermore, "[a]n indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." State v. Lemacks, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting State v. Lequire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)).

At the post-conviction hearing, trial counsel testified that he felt no reason to file a

motion for a bill of particulars because he had access to the State's discovery and did not know of any additional information that "needed filling in." He further testified that he would "[a]bsolutely" have explained a theory of criminal responsibility to a defendant charged in a multi-count indictment with co-defendants. Although the Petitioner claimed that trial counsel told him there was "no way" he would be convicted, trial counsel testified that he tried to persuade the Petitioner to accept the State's plea offer because of the "substantial" evidence against him. We agree with the post-conviction court that the Petitioner was apprised of the information he needed to make an informed decision about whether to accept or reject the plea agreement, and thus was not prejudiced by trial counsel's failure to request a bill of particulars.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE