IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST SESSION, 1998

FILED

September 28, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9707-CC-00262 |
| | ) | |
| Appellee, | ) | |
| | ) | COFFEE COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JOHN W. ROLLINS, JUDGE |
| STARLING JEAN HINER, | ) | |
| | ) | |
| Appellant. | ) | (DUI FIRST OFFENSE) |

FOR THE APPELLANT:

ROBERT S. PETERS
SWAFFORD, PETERS & PRIEST
100 First Avenue, S.W.
Winchester, TN 37398

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

JANIS L. TURNER
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

MICHAEL LAYNE
District Attorney General

STEPHEN WEITZMAN
Assistant District Attorney General
P.O. Box 147
Manchester, TN 37355

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Starling Jean Hiner, appeals as of right her conviction for first offense DUI following a jury trial in the Circuit Court of Coffee County. Defendant was subsequently found guilty by the trial court of violation of the Implied Consent Law. The trial court sentenced Defendant to eleven (11) months, twenty-nine (29) days with all but four (4) days suspended for the DUI conviction, and the court revoked her license for a period of one (1) year for the violation of the Implied Consent Law. Defendant raises the following two issues in this appeal: (1) whether the evidence was sufficient to sustain a conviction for DUI beyond a reasonable doubt, and (2) whether the arresting officer made a proper traffic stop and whether he had the authority to make that stop. The judgment of the trial court is affirmed.

On June 29, 1996, Officer Ray Stewart, Constable Calvin McGee and Lakewood Park security guard Terry Jackson, were all called to the home of Lucy Grizzle, a resident in Lakewood Park, regarding a disturbance between Ms. Grizzle and her neighbor, the Defendant. Officer Stewart, Constable McGee and Mr. Jackson testified at trial that upon their arrival at the Grizzle residence at approximately 5:00 p.m., Defendant appeared to be intoxicated as she was speaking loudly, slurring her words, and was unsteady on her feet. The officers calmed everyone down and then asked Defendant and her boyfriend to return to their home. Officer Stewart instructed Defendant and her boyfriend that should the officers need to return, that he would arrest them for public intoxication.

At approximately 9:45 p.m. that same evening, Constable McGee pulled over a vehicle in Lakewood Park driven by Defendant. Mr. Jackson was in the car with

Constable McGee. Constable McGee testified at trial that he had first observed a vehicle roll through a stop sign at the intersection of Lakewood Drive and Rim Fire Drive and proceed to the left on Rim Fire Drive. Constable McGee then followed the vehicle for approximately two and a half blocks where he observed it traveling slowly and swerving to some extent. While following the vehicle he realized that the car belonged to either Defendant or her boyfriend although he could not tell who was driving at the time.

After initiating the "blue lights" and pulling the vehicle over, Constable McGee asked Defendant, who was in fact the driver, to step out of the car. At this point he noticed that Defendant smelled of alcohol, was unsteady on her feet and slurred her speech. Constable McGee then administered two field sobriety tests, recitation of the alphabet and the finger to nose test, both of which Defendant failed. Constable McGee determined Defendant to be under the influence of alcohol.

Mr. Jackson, who was riding with Constable McGee, also observed that Defendant failed the field sobriety tests. He testified that Defendant had been driving the vehicle very slowly and that it was weaving prior to being stopped. When Defendant got out of the car, Mr. Jackson noticed that she was "barely able to stand up" and that she smelled of alcohol.

Constable McGee radioed Officer Stewart when he was following Defendant's car and told him that he was about to stop a car because of a suspected intoxicated driver. Officer Stewart, who was only a few blocks away, drove to the scene to aid Constable McGee. While Officer Stewart ran a records check on the Defendant's license, he watched Defendant stagger towards the back of her car and fail to

successfully complete the field sobriety tests. In his opinion, Defendant was "obviously drunk" and "had no business doing any driving of any kind." He further testified that she appeared to be more drunk at 9:45 p.m. than when he had seen her earlier that day.

Constable McGee placed Defendant under arrest, had her vehicle towed, and took her to the Coffee County Jail. While driving Defendant to jail, she told him that she had consumed five beers. Also while in the patrol car, a car in front of them was "driving all over the road" and Defendant commented to the officers that "[h]e's drunker than I am."

Officer Dale Brissey, a correctional officer at the county jail, testified that when Defendant arrived at the jail she appeared to be under the influence of an intoxicant. He noticed that her eyes were bloodshot, her speech was slurred, and that she was unsteady on her feet. Defendant refused to submit to the intoximeter test.

Defendant testified that she was not intoxicated and that she only consumed one and one-half beers prior to being stopped by Constable McGee. She said that the reason she couldn't recite the alphabet was because she was too nervous to do so. However, she claimed that she was not incapable of driving. Her boyfriend, Ramsey Johnson, testified that Defendant was not drunk and that she consumed less than two beers that evening. He said that she drove the car because she had had less to drink that evening than he had. Officer Stewart, Constable McGee, Mr. Jackson and Ms. Grizzle all testified that even though Lakewood Park is a privately owned and operated development the general public nonetheless travels on the roads within Lakewood Park on a regular daily basis. Lakewood Park does have a

gated entrance into the subdivision, but according to testimony presented at trial, essentially no one is denied access into the subdivision.

## I. SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict

approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1981). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude beyond a reasonable doubt every other reasonable hypothesis save guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987).

Tennessee Code Annotated section 55-10-401 provides in part as follows:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . **or any other premises which is generally frequented by the public at large**, while: (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system;

Tenn. Code Ann. § 55-10-401(a)(1).

First, from the testimony presented at trial, Defendant was clearly in physical control of the car. The officers observed the car weaving on the road and when the officers stopped the vehicle, it was Defendant who exited the car from the driver's

side. Second, it is clear to us that Defendant was on premises frequented by the public at large. Defendant's insufficiency issue is based on the argument that since the streets of Lakewood Park are privately maintained by the board of trustees for Lakewood that they are not subject to the laws of this State. We find that the record establishes that the streets of Lakewood Park are frequented by the public at large. Although there is a gated entrance into the subdivision, apparently no one is actually turned away from entering. According to testimony, the public enters the area on a daily basis and three public establishments are even located in the subdivision. Defense counsel vigorously attempted to establish at trial that the roads located within Lakewood Park are not in fact frequented by the public. By its verdict, the jury rejected Defendant's claims and accredited those of the State. Based on a careful reading of Tennessee Code Annotated section 55-10-401, it is clear that the legislature intended for that statute to be applicable to private property which the public frequents. Defendant's argument is meritless.

Third, based on the facts presented at trial, the jury could have found Defendant to be under the influence of an intoxicant. Officer Stewart, Constable McGee, Mr. Jackson and Correction Officer Brissey all testified that Defendant was intoxicated. Furthermore, Defendant failed to successfully complete the field sobriety tests. A rational jury could have concluded that Defendant's appearance, her unsteadiness on her feet, her slurred speech, her failure to adequately perform each of the field sobriety tests, and even her own statements shortly after the arrest demonstrated that Defendant was under the influence of an intoxicant. In viewing the evidence in the light most favorable to the State, the evidence was sufficient to support a conviction for first offense, DUI. This issue is without merit.

## II. LEGALITY OF THE STOP

Defendant argues that the arresting officer, Constable McGee, made an improper stop of Defendant's car, and that furthermore, he did not have the authority to even make the stop.

An investigatory stop of a motor vehicle may be made upon a reasonable suspicion by a police officer, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In order to determine the specific and articulable facts, this Court must consider the "totality of the circumstances." State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (citation omitted). Constable McGee testified at trial that he began following a vehicle after he saw it "roll" through a stop sign. He then observed the car being driven in an erratic manner. These facts are sufficient to support a reasonable suspicion that the driver was under the influence of an intoxicant. This issue is without merit.

Defendant also argues that the authority of a police officer is different from that of an elected constable. Specifically, Defendant argues that Constable McGee had no authority to stop her vehicle and arrest her since there is no proof in the record that he had graduated from a program required under Tennessee Code Annotated section 8-10-120 for operation of a patrol car by a constable. There is no showing in the record that Defendant attempted to elicit any such information from the Constable at the time of his testimony, nor did Defendant object to the Constable's authority at the time of his testimony. Defendant also did not attempt to raise this

issue prior to trial.  We therefore find that Defendant has waived this issue.  <u>See</u>

Tenn. R. App. P. 36(a); Tenn. R. Crim. P. 12(f).


Accordingly, the judgment of the trial court is affirmed.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
L.T. LAFFERTY, Special Judge