**STATE of Tennessee**

v.

**Melvin B. DOBBINS.**

Court of Criminal Appeals of Tennessee,
at Nashville.

Sept. 19, 2006 Session.

Jan. 5, 2007.

Richard Tennent, Nashville, Tennessee (on appeal); and Mike Fox, Nashville, Tennessee (at trial), for the Appellant, Melvin B. Dobbins.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and David Vorhaus, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Aggrieved of his conviction of driving under the influence (DUI) following a bench trial in the Davidson County Criminal Court, the defendant, Melvin B. Dobbins, appeals and presents the issues: (1) whether, after hours, a public park was an area "generally frequented by the public" for purposes of the DUI statute; and (2) whether the evidence supported a finding that the defendant also drove his vehicle on a public street. Following our review, we affirm the DUI conviction.

Testifying in a bench trial, Nashville Metropolitan Police Officer Timothy Dederick recalled that, while he was on routine patrol about 2:00 a.m. on September 21, 2003, he drove into the parking lot of Rose Park, a Metropolitan Nashville public park, because he "usually [got] a lot of [after-hours] car stops up there." He testified that a sign at the entrance of the park indicated that the park closed at either 10:00 or 11:00 p.m. and that in the late-night or early-morning hours, police officers typically found from two to four cars per night in the parking lot. On some nights, a car would be parked there almost every hour when the officers checked the lot. Again typically, the officers arrested or cited the occupants and/or drivers for criminal trespass. The officer testified that Rose Park was located in a high-crime and drug trafficking area.

Officer Dederick testified that the parking lot was un-gated and had only one access road that served as both the entrance and exit. This road led directly to Ninth and Olympic Streets, which are public thoroughfares.

On his September 21, 2003 patrol, Officer Dederick noticed a car parked at the "far end" of the parking lot, and as the officer drove toward the car, its headlights came on, and "it started up and started to drive off towards the entrance of the park again." The officer activated his blue lights, stopped the car, and discovered the defendant in the driver's seat. When the officer approached the driver's side door, he detected "a very strong smell of alcoholic beverage coming from inside the interior of the car there from Mr. Dobbins." Officer Dederick testified also that the defendant's "eyes were very watery," his clothes were "very disheveled," and his speech was "very slurred."

The defendant "about fell over" in an attempt to get out of the car. After getting out, the defendant braced himself against the car. Officer Dederick testified that the defendant stated that he had consumed four beers that evening. The officer initiated the walk-and-turn field sobriety test with the defendant; he suspended the test for the defendant's safety, however, because the defendant was "very unsteady on his feet [and] had a hard time standing up." Officer Dederick acknowledged that the defendant told him that the defendant had difficulty with balance due to a medical condition.

Officer Dederick testified that he formed an opinion that the defendant was too im-

paired to operate a motor vehicle and arrested him, as is pertinent to this appeal, for DUI and criminal trespass.

On cross-examination, the officer admitted that, after the closing time, the park was not generally frequented by the public. The officer remembered no beverage containers or other evidence of alcohol in the defendant's car.

The defendant neither testified nor offered any other witnesses in his defense.

After finding that the defendant was intoxicated and impaired when Officer Dederick found him, the court convicted the defendant of DUI based upon alternative findings concerning the situs of the defendant's DUI: (1) The parking lot was frequented by the public, even after the park closed; and (2) the defendant drove to Rose Park on the public streets in an intoxicated condition. Although the court commented that the trespass charge was "sort of incongruous," it convicted the defendant of criminal trespass. The latter conviction is not challenged on appeal.

The defendant challenges on appeal the sufficiency of the evidence supporting both DUI theories upon which the trial court relied.

■ When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R.App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters,* 137 S.W.3d 641, 654–55 (Tenn.Crim.App.2003). The appellate court neither re-weighs the evidence

nor substitutes its inferences for those drawn by the trier of fact. *Winters,* 137 S.W.3d at 655. The credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The appellate court affords the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

■ These rules apply to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters,* 137 S.W.3d at 654. Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973), an accused may be convicted exclusively on circumstantial evidence only when the facts and circumstances are so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, *State v. Crawford,* 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id.* at 484, 470 S.W.2d at 613.

Tennessee Code Annotated section 55–10–401 proscribes DUI. As is pertinent to the present case, this Code section provides:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment

house complex, *or any other premises which is generally frequented by the public at large*, while: (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system . . . .

T.C.A. § 55–10–401(a)(1) (2004) (emphasis added).

The defendant's first sufficiency-of-the-evidence issue is whether the evidence supports the finding that the Rose Park parking lot was a "premises generally frequented by the public at large." Whether an intoxicated driver's location is at a premises generally frequented by the public at large is a question of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990) (rejecting the intermediate appellate court's determination that a premises was not frequented by the public at large, reinstating the trial court's finding to the contrary, and stating that the intermediate appellate court "substituted its inferences for those drawn by the trier of fact. This it cannot do."); *State v. Hiner*, 988 S.W.2d 697, 700 (Tenn.Crim.App.1998) (commenting that the jury rejected the defendant's proof that the premises was not frequented by the public and accredited the proof to the contrary submitted by the State). As such, our task is to determine whether the evidence supports "the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App. P. 13(e).

We have carefully considered the defendant's claim that the illegal nature of after-hours visits to Rose Park defeats the State's argument that the park's parking lot was a premises generally frequented by the public at large. We recognize that no evidence suggests that late-night visitors to Rose Park came to socialize or utilize the park's amenities. We agree that, at 2:00 a.m. on September 21, 2003, the Rose Park parking lot was closed, providing a cloistered spot for those wishing to engage in private or even illegal activity. We have not discovered any decisions in this jurisdiction that focused upon the "public at large" aspect of the factual premise at issue, and we have considered that the park's late-night visitors qua trespassers do not equate to the public "at large."

We also have considered the trial court's understandable concern that the defendant's charge of criminal trespass was "sort of incongruous" with the charge of DUI. The defendant's conviction arguably represents a finding by the trial court that, not only did the defendant, without Metropolitan Nashville's effective consent, enter or remain on property, *see* T.C.A. § 39–14–405(a) (2003) (proscribing criminal trespass), but also that Rose Park's parking lot was not "open to the public when the [defendant] entered and remained," *see id.* § 39–14–405(b) (promulgating as a defense to criminal trespass that the property was open to the public).

Affording the required deference to the trial court's findings of fact, however, we hold that the evidence is sufficient to support the trial court's finding that the parking lot was a premises generally frequented by the public at large. First, even if after-hours patrons of the park go there to conduct illegal activity and even though the going itself is a misdemeanor, we find nothing in the proscription of DUI that requires that those who frequent a property must be somehow cross-representative of the general public. Second, even if it were significant that the nature of the park's after-hours patronage was somehow skewed toward deviant activity, Officer Dederick's characterization of Rose Park's environs as a high-crime, drug trafficking area falls short of illustrating the nature of that park's late-night patronage, and consequently, we are uninformed about whether the patrons are somehow cross-

representative of the public at large. Third, we find nothing in the phrase "generally frequented by the public at large" that prompts a concern with the time of day when an accused enters the premises. The record shows that the parking lot served a public park in an urban area. The public was invited to utilize the lot and the park's amenities. Evidence showed that people actually did drive to the parking lot. Although the sign at the entrance indicated a closing time, the entrance was never barred by a gate or other obstruction. Thus, the parking lot was a premises generally frequented by the public at large. Because the proscriptive statute focuses upon the nature of the property, not the time of day, the trial court's determination is supported in the record.

At this juncture, we mention the defendant's claim that Tennessee Code Annotated section 55–10–401, if interpreted in a way to uphold the defendant's DUI conviction, is necessarily void as being unconstitutionally vague. We disagree. Because we have rejected the idea that the premises' nature for public-frequenting can shift or change during a 24–hour cycle, the opportunities for unforeseen application dissipate.

█ Next, we consider whether the evidence supports the trial court's alternative finding that the defendant committed DUI when he left a public street and entered the parking lot. Here, we hold that the evidence is insufficient. Without a doubt, the defendant drove upon public streets to arrive at the park, but we can find no basis to support the criminal court's inference that he was impaired when he did so. No evidence established when the defendant arrived at Rose Park, and no evidence established his state of impairment, if any, at that time. The officer's testimony that he recalled no beverage containers in the defendant's car might well suggest that the defendant imbibed before he arrived at the park, but we are unable to glean from the evidence whether the defendant disposed of alcoholic beverage containers at the park or whether he arrived at the park after imbibing but before becoming impaired.

Accordingly, we find adequate the evidence convicting the defendant of DUI, although we reject the trial court's second basis for that conviction.

### [REDACTED FROM PUBLISHED OPINION]

For the reasons explained, we affirm the defendant's DUI conviction.