IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2013 Session

## STATE OF TENNESSEE v. TRACY H. GRAVES

**Appeal from the Criminal Court for Hamblen County**
**No. 10CR536     John F. Dugger, Jr., Judge**

—

**No. E2012-01160-CCA-R3-CD - Filed July 25, 2013**

—

A Hamblen County jury convicted the Defendant, Tracy H. Graves, of driving under the influence ("DUI") second offense, and the trial court sentenced the Defendant to eleven months and twenty-nine days' incarceration. On appeal, the Defendant contends that the evidence is insufficient to sustain his DUI conviction because his vehicle was not in a location named in the indictment. After a thorough review of the record and the relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Ricky A.W. Curtis, Blountville, Tennessee, for the appellant, Tracy H. Graves.

Robert E. Cooper, Jr., Attorney General & Reporter; Deshea Dulany Faughn, Assistant Attorney General; Barry P. Staubus, District Attorney General; Dan E. Armstrong, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

This case arises from events that led to the Defendant's arrest on July 6, 2010. Pursuant to the events leading to his arrest, a grand jury indicted the Defendant on November 1, 2010, for one count of DUI and one count of DUI second offense. At the Defendant's trial on these charges, the parties presented the following evidence:

Officer Devin Cribley, of the Morristown Police Department, testified that he was dispatched to a Days Inn in Morristown, Tennessee, regarding "an intoxicated person behind

the wheel of a vehicle in the parking lot." Officer Cribley stated that as he pulled into the hotel, he saw a yellow Jeep Wrangler parked facing the wrong direction on an "access street." He saw a man sitting in the driver's seat. Officer Cribley identified the Defendant as the man sitting in the Jeep when he arrived at the scene. The officer noted that the Defendant had bloodshot eyes, slurred speech, and had difficulty producing his license and registration when the officer directed him to do so. The officer smelled the odor of alcohol on the Defendant.

Officer Cribley testified that he administered field sobriety tasks including the "walk and turn" and the "one-legged stand" and determined that the Defendant was impaired. Officer Cribley searched the Jeep and found a cooler in the back seat on the passenger side of the vehicle that contained five opened and partially empty liquor bottles. The Defendant consented to a blood alcohol test, and he submitted a blood sample at a hospital. Officer Cribley testified that the Tennessee Bureau of Investigation ("TBI") later tested the sample, and the result, according to the TBI report admitted into evidence, was that the Defendant had a blood alcohol level of .26%. The officer administered a breathalyzer to the Defendant approximately an hour after his blood was drawn, which indicated the Defendant's blood alcohol level was .23%.

During cross-examination, Officer Cribley testified that the Defendant repeatedly told him that he was not driving the vehicle. The officer admitted that a defense witness, Donald Kimbrough, had stated that he drove the Jeep to the Days Inn. Officer Cribley continued to say that he did not speak with Kimbrough during his investigation.[1] The Days Inn's night clerk told Officer Cribley that "someone" had rented a hotel room for the Defendant, but Officer Cribley did not believe a room had been rented because he did not find a receipt or a room key proving a rental. Officer Cribley admitted that field sobriety tasks were not necessary given the Defendant's obvious impairment.

During redirect examination, Officer Cribley stated that he determined that he did not need to talk to Kimbrough because the Defendant was not arrested for driving but for being in physical control of a vehicle.

The State played a video recording of the Defendant's arrest, which was filmed by Officer Cribley's dashboard camera. The DVD, which the trial court admitted into evidence, began just before Officer Cribley turned his vehicle off of a road towards the Days Inn. No street sign was visible when Officer Cribley turned into the apparent parking lot. On the left, the officer passed several parking spots in front of what appeared to be an apartment or hotel building on his left. On the right, the pavement did not have a curb until just before the Days

---

[1] Officer Cribley's testimony does not indicate how he became aware of Kimbrough's statement without talking to him.

Inn building, next to where the Defendant's Jeep was parked. Upon arriving at the scene, the Days Inn building was on the left and had a canopy extending to the right over about half the width of the pavement. The Defendant's Jeep was located to the right of the canopy, on the other half of the pavement. An arrow indicating the direction of traffic was painted on the ground in front of the Jeep, and the arrow was pointing in the opposite direction of the way the Jeep was facing. The video records Officer Cribley and another officer interacting with the Defendant.

Donald Kimbrough testified that he first met the Defendant on July 6, 2010, through a mutual friend, Jenny Jarnigan, when they were with friends at a Planet Wings restaurant. Kimbrough recognized that the Defendant was "drunk" while the group was at Planet Wings because the Defendant was staggering and spilling drinks. When employees asked the Defendant to leave Planet Wings, Kimbrough believed the Defendant was too intoxicated to operate a vehicle, so Kimbrough took the Defendant's keys from him. Kimbrough then drove the Defendant in the Defendant's Jeep to the Days Inn and rented a room for him. Kimbrough left the Defendant inside the room. Kimbrough testified that the Defendant's Jeep was black in color.

On cross-examination, Kimbrough stated he believed the Defendant's Jeep to be black in color but that if there were evidence showing otherwise, he would be incorrect. When employees asked the Defendant to leave Planet Wings, Kimbrough believed that the Defendant planned on driving and that he should take the Defendant's keys from him. Kimbrough and the Defendant had an argument in the parking lot of the Days Inn, which Kimbrough attributed to the Defendant's intoxication. He left the Jeep parked in front of the Days Inn outside of a canopy, which was where the clerk had told Kimbrough to park the Defendant's vehicle. Kimbrough could not remember if that location was an actual parking spot. Kimbrough said that, after he parked the Defendant's car, he returned to the Defendant's room and left the Defendant's car keys on a night stand in the hotel room. Jenny Jarnigan informed Kimbrough about the Defendant's arrest, but Kimbrough felt that he had no relevant information to give the arresting officer regarding the incident. Kimbrough also admitted to being convicted of criminal impersonation in 2004.

The Defendant testified that on July 6, 2010, he was visiting Jarnigan while on vacation. The Defendant consumed alcohol at Douglas Lake, and then Jarnigan drove him to Planet Wings. At Planet Wings, the Defendant admitted he got into a "fight" with Jarnigan because he was jealous of Kimbrough flirting with her. As a result of this "fight," he was asked to leave the establishment. Kimbrough then drove the Defendant in his Jeep to the Days Inn. The Defendant stated he had no intent to drive his Jeep during the evening. When Officer Cribley found him in his Jeep, he was retrieving clothes and his stereo's faceplate.

On cross-examination, the Defendant admitted that Kimbrough identified his Jeep as black, when, in fact, the body is yellow. He also admitted that he originally believed Kimbrough had left him in the parking lot of the Days Inn, but he later realized that Kimbrough had rented him a room and left him there. He blamed his confusion on his alcohol consumption. The Defendant said that he went to retrieve items from his Jeep, including clothes and jewelry, because the vehicle had a "rag top," and he did not want anything to be stolen from his vehicle. The Defendant explained that he was right-handed and that it was easier to collect things from his Jeep while seated in the driver's seat. The Defendant described removing his stereo faceplate as "tricky." He admitted that he had enough time between Officer Cribley arriving at the scene and walking to the Jeep that, had the keys been in the ignition, he could have removed them. The Defendant conceded that the Jeep itself was functioning, and he could have left the scene in his vehicle had he chosen to do so.

The State called Officer Cribley as a rebuttal witness. Officer Cribley stated he had owned a Jeep of similar year and model, and that he could remove his stereo's faceplate from either the driver's side or the passenger side. Officer Cribley said he was left handed.

The jury convicted the Defendant of both counts of the indictment, and the trial court sentenced him to eleven months and twenty-nine days' incarceration. On appeal, the Defendant contends only that the evidence is insufficient to sustain his DUI conviction.

## II. Analysis

The Defendant contends that the indictment only alleged that he was knowingly in physical control of an automobile "while on the premises of any shopping center, trailer park, or any apartment house complex, or any other premises that is generally frequented by the public at large,"[2] and that there was no proof at trial that he was in one of those locations. Accordingly, he asserts that the evidence was insufficient to sustain his conviction for DUI. The Defendant argues that the proof only shows that he was intoxicated while in physical control of a vehicle on a road, and, thus, no rational trier of fact could have found he was in any of the locations listed in the indictment. The State argues that the evidence was sufficient because the proof illustrated that the Defendant's Jeep was located in a space frequented by the public at large. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see*

---

[2]The indictment was originally for driving under the influence "upon the public roads, streets, and highways of the State of Tennessee," however it was amended to reflect the above-quoted language.

Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally

insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Tennessee Code Annotated provides, in pertinent part, that "[it] is unlawful for any person . . . to be in physical control of any automobile or other motor driven vehicle . . . while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while . . . [t]he alcohol concentration in such person's blood or breath is eight hundredths (.08 %) or more." Tenn. Code Ann. § 55-10-317 (2008).

The Defendant's argument focuses on Officer Cribley's testimony that the Defendant's Jeep was "parked in the wrong direction on an access street." The Defendant argues that this use of the word "street," and the indication that the Jeep was facing the wrong way, proves that the Jeep was located on a "traveled thoroughfare," and, thus, there was no evidence that the Jeep was in a parking lot or other location frequented by the public at large.

"Whether an intoxicated driver's location is at a premises generally frequented by the public at large is a question of fact." *State v. Dobbins*, 265 S.W.3d 419 (Tenn. Crim. App. 2007). Although Officer Cribley's testimony does describe the location of the Jeep as on a road, his testimony was not the only evidence presented at trial that could inform a jury about the Jeep's location. The video footage from Officer Cribley's dash camera was also presented. As noted above, there is no visible street sign when the police cruiser turned into the Days Inn and there are several parking spaces nearby. Even though Officer Cribley described the Jeep as being parked on an "access road," a rational trier of fact, when viewing the video evidence, could have determined that the Jeep was located in a parking lot or other place frequented by the public at large, based on the other parking spaces nearby, the lack of a street sign, and the location of the Jeep just outside of the Days Inn building. We also note that Officer Cribley was dispatched due to an intoxicated person behind the wheel "in a parking lot." This Court will not re-weigh or reevaluate the evidence. *Matthews*, 805 S.W.2d at 779. There was sufficient evidence for a rational jury to find that the Defendant's vehicle was in a place frequented by the public at large, and we will not disturb that finding. Accordingly, the Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the evidence is sufficient to support the Defendant's conviction. We, therefore, affirm the trial court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE