# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 6, 2012

## STATE OF TENNESSEE v. WILLIAM PATRICK PEEBLES

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-829   Steve Dozier, Judge**

---

### No.  M2011-01312-CCA-R3-CD   Filed - 06/06/2013

---

Appellant, William Patrick Peebles, and his two co-defendants, were indicted by the Davidson County Grand Jury for three counts of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of use of a firearm during commission of a dangerous felony.  After a jury trial, Appellant was convicted of all charges.  The trial court sentenced Appellant to an effective sentence of fifty-eight years.  On appeal, Appellant argues that the trial court erred in allowing the State to offer in evidence a videotape of an interview conducted by an officer, that the evidence was insufficient to support his convictions, and that the trial court erred in imposing consecutive sentences.  After thorough review of the record, we determine that Appellant's issues have no merit.  Therefore, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Misty D. Parks, Spring Hill, Tennessee, for the appellant, William Patrick Peebles.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On the evening of December 22, 2008, E.K.[1] and her boyfriend, R.C., were working on some remodeling projects in their home in Nashville, Tennessee, before they left to see their families for the holidays. They had already purchased gifts, including some gift cards, to give as presents. As they were working, they heard a knock on the door. R.C. went to answer the door and two men, both with their faces partially obscured, asked for a cigarette. R.C. tried to shut the door as hard as he could, but the men charged into the house. R.C. stated that both men had a gun.

E.K. came into the room from another room. The two men began yelling at the couple not to look at them and demanding money. They were placed face down on the floor in the office. One man held a gun on the couple while the other man searched for valuables. E.K. was blindfolded. A third man arrived at the house. When the third man knocked on the door to announce his arrival, the original two attackers said, "Cuz is here." At some point after the arrival of the third man, both E.K. and R.C. heard a gun discharge.

R.C. was blindfolded and had his hands tied behind his back with one of his neckties. R.C. was taken into another room, and a man that he identified as the third man kept watch over him. R.C. attempted multiple times to undo his hands. Every time he began to escape the third man would yell, "You're going to die, mother fucker. I hope you're enjoying your Christmas, mother fucker. We're going to have a better Christmas than you, mother fucker." The third man also slapped R.C. and hit him with a gun one time.

During this time, E.K. was blindfolded in the office. One of the men demanded drugs from her. They began to search her pockets and pulled her pants down. One man said that he knew some women hid drugs in their vagina, and he inserted his fingers in her vagina to search for drugs. He then penetrated her vagina with his penis. She was then turned face down and one of the men penetrated her anus. He demanded that she "pump her ass" while he was anally raping her. E.K. also testified that during the time frame of the two rapes, one man asked if she had a condom. When E.K. said she did not, he asked for Saran Wrap. The attacker apparently went to the kitchen to get Saran Wrap and created a condom out of the wrap.

---

[1] Because of the nature of the crime, this Court has decided to identify the victims by their initials.

R.C. did not know what was happening to E.K. He was very concerned for her. As he was lying on the floor, he heard someone come into the room and say, "go do your thing." R.C. heard water begin to run in the bathroom shortly thereafter. When he heard the water running, he knew that what he thought was happening was most likely happening.

After being both vaginally and anally raped, E.K. was then taken to the bathroom and placed in the tub. The men turned on the water. E.K. was still blindfolded. They demanded she take off her shirt. E.K. had just received a pearl necklace for Christmas and was worried the men would take it, so she lifted up her shirt instead to expose her breasts to them, but still hide the necklace. The attackers asked her for bleach so they could clean her. E.K. became very frightened and told them she did not have any bleach. One of the perpetrators demanded that she fellate him and he put his penis in her mouth. E.K. testified that he did not ejaculate in her mouth and thought that he ejaculated in the toilet because she heard it flush. She believed that the oral rape was completed by a third man. The men poured bathroom cleanser on her in the tub.

In the meantime, R.C. had decided that he had to escape to get help no matter the cost. He pulled hard on the necktie binding his hands and got his hands free. There was no one there yelling or hitting him as he attempted to escape. He ran out of the house and across the street yelling for his neighbor to call 911. E.K. testified that the three attackers realized that R.C. had gotten away, and they fled. She got a robe and ran out on the porch screaming for help and stating that the perpetrators had raped her.

E.K. testified that she believed the episode lasted between a half-hour to an hour. She stated that the men spoke with each other like they had a plan and were on a mission. She never heard one of the other three refuse to participate or be coerced into participating.

When the police arrived they discovered both a used condom and a piece of Saran Wrap on the floor. It was concluded that the men involved stole a computer, several televisions, their wrapped gifts, R.C.'s wallet, some jewelry, and numerous gift cards, including a Target gift card. E.K. was taken to the hospital and a rape kit was collected.

Metropolitan Nashville Police Detective Jeff Wiser investigated the crime. As part of the investigation, the officers discovered that a telephone call had been placed to a Target store on Christmas Eve to inquire about the balance on a gift card that E.K. and R.C. had purchased as a present. The telephone call was made by Tameka Peebles and originated at an address around the corner from the location of the incidents at hand. Appellant's grandmother lived in the house from which the telephone call originated. Detective Wiser learned that Appellant lived with his grandmother on occasion. Ms. Peebles had been given the gift card by a Santonio Peebles, who had received it from Appellant. Detective Wiser

interviewed Ms. Peebles and Appellant's grandmother and as a result, began to focus on Appellant.

On February 17, 2009, Appellant voluntarily came for an interview with Detective Wiser. Appellant first stated that he did not know anything about the incident at hand. Then stated that he was outside the house but that he left before anything happened. He told Detective Wiser that he did not want to talk about the incident because it involved family.

Subsequently, Detective Wiser learned that Monroe and Michael Dodson, who are Appellant's cousins, were involved in the crime. Detective Wiser received information that the DNA recovered from the condom found at E.K.'s residence matched that of Monroe Dodson.

Appellant, Monroe Dodson, and Michael Dodson were indicted by the Davidson County Grand Jury on March 17, 2009, for three counts of aggravated rape, two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of use of a firearm during commission of a dangerous felony.

After being arrested, Appellant told Detective Wiser that he wished to give another statement. This statement was recorded on videotape. In this statement, Appellant initially denied any involvement with the incident. Eventually, he admitted that he was the third person who arrived at the house. He admitted that he touched E.K.'s vagina. Appellant asserted that he was forced to participate in the crimes and that he received $100 from the crime.

Prior to trial, Appellant filed a motion in limine requesting that the videotape of the statement given to Detective Wiser be presented at trial solely in audio form because Appellant was in custody and dressed in jail attire. Appellant argued that his appearance in the video would be prejudicial. The trial court held a hearing on the matter and determined that the videotape would be more probative than prejudicial because the jury could see Appellant and see his body language while he was making the statement. The motion was denied.

At the conclusion of the jury trial, Appellant was found guilty as charged of all charged offenses. He was sentenced by the trial court to an effective sentence of 58 years.

## ANALYSIS

### Admission of Videotape Interview

Appellant's first argument is that the trial court erred in denying his motion in limine to present only the audiotape instead of the videotape of his interview with Detective Wiser. He once again argues that the appearance of Appellant in his jail attire was more prejudicial than probative. The State disagrees.

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases . . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951. In order to be admissible, evidence must be relevant and probative to an issue at trial. *State v. McCary*, 922 S.W.2d 511, 515 (Tenn. 1996); *see also* Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

The trial court made the following findings, "Obviously if someone is under arrest they know he is going to be with the police and seeing something is – will be a lot more probative than just hearing it, or seeing him and/or the body language, et cetera." We find no abuse of discretion on the part of the trial court in its denial of Appellant's motion. As stated by the trial court, the jury knew that Appellant was in custody at the time of his interview from Detective Wiser's testimony at trial. In addition, we agree with the trial court's determination that Appellant's body language was very probative in this scenario because he told multiple versions of his participation during the interview and therefore the jury's assessment of the truth was crucial. Therefore, we conclude there was no abuse of discretion.

This issue is without merit.

## Sufficiency of the Evidence

Appellant also argues that the evidence was insufficient to support his convictions for aggravated rape, especially aggravated kidnapping, aggravated robbery, aggravated burglary, and employing a firearm during a dangerous felony. The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Bland*, 958 S.W.3d at 659; *Tuggle*, 639 S.W.2d at 914.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). A defense fairly raised must be negated beyond a reasonable doubt. T.C.A.

§ 39-11-201(a)(3). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

Duress

The jury was given an instruction for the defense of duress. Appellant argues that there was proof of duress presented at trial in Appellant's statement to Detective Wiser. Appellant argues that the State failed to prove that the defense of duress did not apply in the case at hand. The law requires that the trial court submit the defense of duress to the jury if admissible evidence fairly raises its applicability because it is not an affirmative defense. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007); *see also* Tenn. Code Ann. § 39-11-203(c) (1997). In the case at hand, the jury heard the trial court's instructions and the evidence at trial. Among the evidence presented was the testimony of E.K. that she did not hear any of the three perpetrators being forced to participate. In fact, she stated that the incident appeared very planned, as if they were on a mission. R.C. testified the third man to come to the residence, identified by his own statement as Appellant, kep watch over R.C., beat him, and taunted him without apparent prompting. The jury was free to reject Appellant's proffered defense supported only by his own self-serving, un-corroborated statement. Clearly, it did so in this case. Therefore, Appellant is not entitled to relief on this issue.

Criminal Responsibility

At trial, the State proceeded under a theory of criminal responsibility to prove Appellant's guilt of the offenses. The jury was instructed as to criminal responsibility. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that a person is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." The person must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility."

*State v. Lemacks*, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting *State v. Lequire*, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). A defendant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." *Id.* at 171. Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *Lemacks*, 996 S.W.2d at 170. No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.*

R.C. testified that the third man who arrived kept watch over him and hit him and cursed at him. Appellant admitted to Detective Wiser that he was present at the house, that he touched E.K.'s vagina, and that he received $100 in proceeds from the crime. Detective Wiser also testified that he discovered that Target gift card purchased by the victims was given by Appellant to a relative. We conclude that a reasonable trier of fact could conclude that Appellant benefitted from the crime and acted in such a manner to assist with the crime. Therefore, the evidence supports his convictions based upon the theory of criminal responsibility.

## Identification

Appellant argues that the victims could not identify him as one of the perpetrators who committed one of the rapes by penetrating the victim, who restrained E.K. to sexually assault her, and who took the items that were stolen. In other words, Appellant is arguing that the evidence is insufficient to support his convictions of aggravated rape, especially aggravated kidnapping, and aggravated robbery. As stated above, Appellant admitted that he was present at the house the night in question and admitted he touched E.K.'s vagina. Furthermore, we have previously determined that the evidence is sufficient to support his convictions under the theory of criminal responsibility. Therefore, whether he actually physically penetrated the victim, restrained the victim, or stole the items in question is not relevant because of the theory of criminal responsibility.

## Serious Bodily Injury

Appellant also argues that there was no proof of serious bodily injury to support his convictions for especially aggravated kidnapping and aggravated robbery. The indictments for all counts for especially aggravated kidnapping and aggravated robbery rely upon the use of a deadly weapon. None of the counts rely upon serious bodily injury for these crimes. Therefore, this issue is moot.

Use of Firearm

Appellant also argues that neither of the victims could positively state that he possessed a gun and, therefore, the evidence is insufficient to support his conviction. Appellant does not argue that there was no firearm used during the crime, but instead that he did not personally possess a firearm. We have previously determined that Appellant's convictions can all be supported through the theory of criminal responsibility. There is no question that R.C. saw a gun and that both E.K. and R.C. heard a gun fired in their home during the incident in question. Moreover, R.C. testified the third man to come to the robbery, identified as Appellant his R.C. with a gun. Therefore, the evidence is sufficient to support this conviction based upon the use of a firearm.

**Sentencing**

Appellant argues that the trial court erred in imposing consecutive sentences based upon the trial court's conclusion that Appellant was on probation at the time the offenses were committed.

The trial court sentenced Appellant to: twenty years for each of the aggravated rape charges, Counts 1, 2, and 3; twenty-two years for each of the especially aggravated kidnapping charges, Counts 3 and 4; ten years for each of the aggravated robbery charges, Counts 6 and 7; five years for the aggravated burglary charge, Count 8; six years for the use of a weapon during a dangerous felony, Count 9. The trial court ordered the aggravated rape charges to be served concurrently to each other, to one of the especially aggravated kidnapping charges, to one of the aggravated robbery charges, and to the aggravated burglary charge. The trial court then ordered that the remaining twenty-two-year sentence for the especially aggravated kidnapping charge be served consecutively to the twenty-year, concurrent sentence; ordered that the remaining ten-year sentence aggravated robbery be served consecutively to the twenty-two-year sentence for especially aggravated kidnapping; and ordered that the six-year sentence for employing a weapon during a dangerous felony be served consecutively to the ten-year sentence for aggravated robbery. Therefore, Appellant's effective sentence was fifty-eight years.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that, "(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . (6) The defendant is sentenced for an offense committed while on probation . . . ." T.C.A. § 40-35-115(b)(4), (6). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230–31 (Tenn. Crim. App. 1997).

Before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct,

and in accord with the general sentencing principles. *See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

At the outset, we note that the State argues Appellant has waived a review of his sentence due to his failure to include a transcript of the sentencing hearing. An appealing party has a duty to provide a complete record to enable meaningful appellate review. *See* Tenn. R. App. P. 24. Clearly, Appellant has failed to do so in this case. This Court is usually unable to consider a sentencing issue in the absence of the transcript. *See State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990). However, while it is true that Appellant failed to include a transcript from the sentencing hearing, the record does contain a detailed Sentencing Order in which the trial court set out its findings and reasoning for the sentence imposed and the exhibits from the sentencing hearing.

In the Sentencing Order, the trial court stated that it is imposed consecutive sentences after a determination that Appellant is a dangerous offender and because he was on probation at the time of the offense. The trial court made the requisite findings with regard to the imposition of consecutive sentences based upon Appellant being a dangerous offender.

As stated above, the trial court need only find one criteria to impose consecutive sentences. We have concluded that the trial court correctly found that Appellant was a dangerous offender. Therefore, we do not need to determine whether Appellant was on probation at the time the offense was committed.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE